**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

      Plaintiff,

      v.                     Case No. 10-20705

ALI DARWICH,

      Defendant.
_____/

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INDICTMENT,**
**DENYING DEFENDANT'S MARCH 29, 2011, "MOTION SUPPORT . . . ,"**
**AND DENYING DEFENDANT'S APRIL 1, 2011, "MOTION TO LEGAL ADVICE . . ."**

Before the court is a motion filed, through previous counsel,[1] by Defendant Ali

Darwich, to dismiss the indictment or, in the alternative, to limit the admissibility of any

statements made by Defendant to law enforcement officials.  The Government has filed

a response in opposition to the motion, and the court conducted a hearing on the motion

on March 2, 7, and 9, 2011.  For the reasons stated below, the court will deny the

motion.  The court will also deny two related motions filed after the hearing which seek

further relief by arguing the Assistant United States Attorney submitted a fraudulent

filing.

---

    [1]  This motion was originally filed by Darwich's counsel Fred B. Walker.  After the completion of the first witness's testimony, Darwich moved to represent himself.  After conducting the appropriate inquiry into whether Darwich's motion was knowing and voluntary, the court granted the motion and Mr. Walker was appointed as stand-by counsel.  Darwich then asserted that he wanted to maintain the motion previously filed by Mr. Walker and stated that he was ready to continue immediately.

## I.  STANDARD

To secure a criminal defendant's cooperation or plea, the Government may grant immunity in exchange for the defendant's cooperation.  *United States v. Pelletier*, 898 F.2d 297 (2d Cir. 1990).  Immunity can take different forms.  *Transactional immunity* which accords full immunity from prosecution for the offense to which the testimony relates; *use immunity* and *derivative use immunity* accord limited immunity from the use of testimony and evidence derived therefrom in a subsequent prosecution.  *Kastigar v. United States*, 406 U.S. 441, 453 (1972).

Further, immunity may be statutory in nature or less regimented.  Under a grant of statutory immunity, the defendant is compelled to testify and, in exchange for the compelled testimony, "no testimony or other information may be used against the witness in any criminal case, except for prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."  18 U.S.C. § 6002.

When federal authorities later prosecute a defendant who was granted statutory immunity, the defendant can request a *Kastigar* hearing to require the Government to prove that immunized testimony was not used.  *Kastigar v. United States*, 406 U.S. 441 (1972).  During this hearing, the Government bears the heavy burden of proving that all of the evidence it proposes to use was derived from a legitimate independent source.

Less formal immunity can be granted by local prosecutors pursuant to contracts, and the contracts themselves govern the extent of the immunity provided.  *See United States v. Turner*, 936 F.2d 221 (6th Cir. 1991).  Because such immunity is contractual in nature, it is strongly influenced by the principles of contract law.  In other words, the remedies available in the event of a breach, as well as the conditions constituting a

breach, are governed by the agreement.  *Pelletier*, 898 F. 2d at 301.   A defendant

granted this less formal immunity lacks the grounds for insisting on a *Kastigar* hearing

as described above, and normal contract law and remedies govern the alleged breach

by prosecutors.

"If a firm agreement has been entered into, the government bears the burden of

proving that the defendant failed to satisfy his part of the deal."  *United States v. Fitch*,

964 F.2d 571, 574 (6th Cir. 1992).  Specifically, the Government must prove that any

breach was "material and substantial."  *Id.*

## II.  DISCUSSION

### A.  Existence of an Immunity Agreement

There is no dispute in this matter that Darwich signed some form of an

agreement with the Government.  Darwich argues that the agreement he signed gave

him and his family complete immunity from any prosecution for any offense by,

essentially, any government agency.  The Government, however, asserts that the

entirety of their agreement is contained within a letter agreement dated May 13, 2009.

The letter agreement sets forth the scope of immunity and the accepted uses for the

testimony.  It does not refer to any form of compulsion or statutory basis.  Although such

letter agreements appear to be referred to somewhat loosely as "Kastigar letters" or

Kastigar agreements," they are properly viewed as offers only of conditional, or limited,

immunity—not the robust statutory immunity for which an actual *Kastigar* hearing is

required—and the parties "can only seek contractual remedies" for enforcement.  *United*

*States v. Mendizabal,* 214 F. App'x 496, 502 (6th Cir. 2006).

The court rejects Darwich's argument that any immunity agreement existed other than that contained within the May 13, 2009, letter.  Under general contract principles, the party asserting the existence of the contract bears the burden to show the existence of the contract sought to be enforced.  *See Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 504 (Mich. Ct. App. 1992) (citing *Hammel v. Foor*, 102 N.W.2d 196 (Mich. 1960).  Further, "no presumption will be indulged in favor of the execution of a contract since, regardless of the equities in a case, the court cannot make a contract for the parties when none exists."  *Id.* (quoting *Hammel*, 102 N.W.2d 196).

Here, the Government has presented a May 13, 2009, letter agreement which was signed by counsel for the Government, Jonathan Tukel and Ronald Waterstreet, as well as then-counsel for Defendant Darwich, Arthur Weiss, and Darwich himself.  During the hearing on this motion Darwich, at various times, argued that his signature at the end of the May 13, 2009, letter was either forged or had been attached to another letter and transferred without his knowledge to the May 13 letter.  The court does not accept Darwich's testimony or his argument that the May 13, 2009, letter was not the immunity agreement he signed.  Darwich's self-serving argument that Government agents and Assistant United States Attorneys created a fraudulent document and knowingly presented it to the court is simply not credible.  Contrary to Darwich's argument, there is nothing inherently suspicious about a document that contains only two signatures on the final page, particularly when one of those signatures is belongs to Darwich's own attorney.  Neither does the court accept Darwich's pervasive argument that such fraud was perpetrated as part of a massive conspiracy to protect and coverup mafia criminal

activity.  There is no credible evidence of a conspiracy.  There is no credible evidence of

a mafia coverup in Darwich's case.

In the face of Darwich's fantastic theories and conjectures is the testimony of

Arthur Weiss, Darwich's former attorney, who confirmed the Government's proffer that

the May 13, 2009, letter is the actual agreement signed by Darwich.  Mr. Weiss also

testified, consistent with the Government's representations, that no other agreements

existed between Darwich and the Government.  The court accepts Mr. Weiss's

testimony, including the statement that he read through the May 13, 2009, letter, line-

by-line and word-by-word to ensure that Darwich understood it.

Further, the court finds that the May 13, 2009, letter constituted the complete

agreement between the Government and Darwich.[2]  In so finding, the court also rejects

Darwich's contentions that any oral agreement existed to supplant or supplement the

May 13 written agreement.  The letter itself indicates in its first paragraph that it sets

forth all of the terms of the proffer discussion.  (5/13/09 Letter, Gov't's Ex. 1.)  The letter

---

[2]  The court is also not persuaded by the implicit argument, made by Darwich's former counsel in his motion, that the letter agreement did not constitute a binding contract.  It is fundamental law that in order to make a valid contract, there must be an offer, acceptance and consideration.  Certain elements, which include offer, acceptance, and consideration, are necessary to make a contract.  *See Kirchhoff v. Morris*, 275 N.W. 778 (Mich. 1937).  With his "apple" analogy, counsel intimates that Darwich received no consideration for his proffer, but this is untrue.  Consideration is "'a benefit on one side, or a detriment suffered, or service done on the other." *General Motors Corp. v. Department of Treasury*, 644 N.W.2d 734, 738 (Mich. 2002) (quoting *Plastray Corp. v. Cole*, 37 N.W.2d 162 (Mich. 1949).  Darwich here received the benefit that the Government would "consider" his proffer in investigating his role in the underlying offense and additionally that the Government would not use his proffer against him in its case-in-chief.  While, "[c]ourts do not generally inquire into the sufficiency of consideration," *id.* (citing *Harris v. Bond & Mtg. Corp.*,  45 N.W.2d 5 (Mich. 1950), both of these benefits are sufficient, individually or combined, to constitute valid consideration to create a contract.

also concludes by stating "[t]his letter contains the entire agreement regarding the terms of this proffer discussion." (*Id.*)[3]  In light of the detail of the agreement, and the specific provisions found within it, it is not credible that a separate oral agreement for immunity from prosecution existed.   Accordingly, the court finds that the immunity agreement between the parties is found solely in the terms of the May 13, 2009, letter agreement, and Darwich's motion must be premised solely on terms and remedies contained within that agreement.

## B.  Terms of the Agreement

The May 13, 2009, letter was addressed to Mr. Weiss, and states that a meeting has been scheduled "for the purpose of receiving your client's proffer regarding certain matters known to your client."  (5/13/09 Letter, Gov't's Ex. 1.)   The letter indicates in its first paragraph that it sets forth all of the terms of the proffer discussion and that the Government "will consider this proffer in deciding how to resolve this investigation as it relates to your client." (*Id.*)  The letter agreement proceeds to list eight terms, including an express provision that the proffer discussion is not a "plea discussion" under Federal Rule of Criminal Procedure 11(f) or Federal Rule of Evidence 410, and Darwich's statements would therefore not be governed by those rules.

---

[3]  The court notes that parol evidence is generally not admissible to determine whether a contract is integrated when a written contract contains such express integration clauses.  *UAW-GM Human Resource Center v. KSL Recreation Corp.*, 579 N.W.2d 411, 415 (Mich. Ct. App. 1998).  "The conclusion that parol evidence is not admissible to show that a written agreement is not integrated when the agreement itself includes an integration clause is consistent with the general contract principles of honoring parties' agreements as expressed in their written contracts and not creating ambiguities where none exist."  *Id.* at 495.

By signing the letter, Darwich agreed to make a "complete and truthful statement of his knowledge of (and role in) the matters under investigation, and to fully and truthfully answer all questions."  (*Id.* ¶ 1.)  The agreement explained that Darwich "may not omit facts about crimes, other participants or his or her involvement in the offenses, and must volunteer all information that is reasonably related to the subjects discussed in the debriefing."  (*Id.*)

The agreement provided that if Darwich was prosecuted for "the matters currently under investigation" the Government could not use in its case-in-chief Darwich's or his counsel's statements during the proffer session (*id.* ¶ 2), but that the Government could use Darwich's statements to cross-examine him or to rebut any evidence offered at trial which was inconsistent with his proffer statements (*id.* ¶ 3).  The agreement specified that the Government could make "derivative use of, and may explore any investigative leads suggested by, any information or statement provided by [Darwich], without restriction," explaining that this provision meant that if Darwich's "statements lead the [G]overnment to develop additional evidence against" Darwich then the Government could use this "derivative evidence in any manner, including in its case-in-chief against your client and at sentencing."  (*Id.* ¶ 4.)

The Government also agreed that if Darwich were convicted, it would not use his statements at sentencing for support for any increase to the applicable offense level or upward variance, but that the Government could otherwise use his statements at sentencing.  (*Id.* ¶ 5.)  Additionally, at the option of the Government, Darwich would have to "verify the truthfulness and completeness" through use of a polygraph examination.  (*Id.* ¶ 7.)  Finally, the agreement included the following provision:

> If your client fails to provide truthful and complete information (such as by making a false statement, providing false information, omitting facts or otherwise misleading the government), there are no restrictions on the government's use of any statements made by your client or information provided by you or your client. The government may then also bring additional charges against your client based upon the failure to provide truthful and complete information, such as perjury, obstruction of justice and false statement charges.

(*Id.* ¶ 8.)

The letter agreement can therefore be distilled to a simple agreement that, Darwich would generally provide truthful information to the Government concerning an ongoing investigation. In exchange for this, the Government promised it would not use Darwich's statement against him in its case-in-chief if he were prosecuted in connection with that investigation, and, additionally, the Government promised that it would "consider" Darwich's proffer "in deciding how to resolve this investigation as it relates" to him.[4]  (5/13/09 Letter, Gov't's Ex. 1.)

There was nothing in the agreement indicating any type of transactional immunity or derivative use immunity.[5]  Rather the agreement provided that Darwich would be "immune" only from the use of his *statements* in the Government's case-in-chief. The Government was therefore not bound by any agreement not to prosecute him for the

---

[4]  Indeed, Mr. Weiss testified that he was hoping that if Darwich fulfilled his end of the bargain, a global resolution could be reached to both the federal investigation and the state investigation.

[5]  Mr. Weiss confirmed that he never advised Darwich that he would be given transactional immunity or "full immunity." Mr. Weiss also testified that had Darwich been offered "full immunity," or had his wife and children been offered citizenship, he would have certainly reduced such an offer to writing, "probably in some type of neon ink," because it would have been so atypical.

matters he discussed in his proffer.  As shown above, at the very core of the agreement

it is assumed that Darwich might well be prosecuted.

Accordingly, regardless of whether the Government establishes any material

breach of the agreement, Darwich's motion to *dismiss* the indictment based on the

immunity agreement cannot be sustained.  At most, Darwich could be entitled only to a

ruling that the Government may not use his statements in its case-in-chief based on the

terms of the agreement.  In order to determine this question, the court must first

examine whether the Government has proven that Darwich materially breached the

agreement.

### C. Breach of the Agreement

The Government argues that it is entitled to use Darwich's statements in its case-

in-chief because he materially breached the May 13, 2009, letter agreement.   "The

conditions which will constitute a breach of the immunity agreement are governed by

the agreement itself."  *Fitch*, 964 F.2d at 574 (6th Cir. 1992) (citing *United States v.*

*Packwood*, 848 F.2d 1009, 1012 (9th Cir. 1988)).  The letter agreement in this case

clearly specifies what will constitute a substantial and material breach of the agreement:

a failure "to provide truthful and complete information."  (5/13/09 Letter, Gov't's Ex. 1.)

The agreement even gives examples of what would constitute a breach in both

paragraph eight ("making a false statement, providing false information, omitting facts or

otherwise misleading the [G]overnment") and paragraph one ("[Defendant] may not omit

facts about crimes, other participants, or his or her involvement in the offenses and

must volunteer all information that is reasonably related to the subjects discussed in the

debriefing").[6]  (*Id.*)  After considering all of the evidence presented in this matter, the

court finds that Darwich not only breached the agreement, but that he managed to

commit virtually every one of the potential acts of breach the Government specified as

examples in the letter.

In making this determination, the court credits the testimony of Agent Milan

Sucevic regarding the details which Darwich offered during his proffer session.  The

court finds Agent Sucevic's testimony was believable.  It largely tracked the recollection

and notes made by Mr. Weiss during the proffer session.

Consistent with the testimony of Agent Sucevic and Mr. Weiss, the court finds

that Darwich did not provide information regarding his alias, Abdullah Derbas.  Darwich

intentionally lied or misled the agents regarding their investigation into the marriage of

Fatima Toufaili, and the paternity of her eldest child.  The court also finds that Darwich

intentionally omitted or downplayed the involvement of Toufaili in the arsons in an

apparent effort to shield her.  Similarly, Darwich did not provide any information

regarding the involvement of "Tony," "Playboy," Rabih Ali, Mazen Mazraani, and

possibly others.  Nor did Darwich volunteer details regarding all of the properties

involved in the various arsons.  While the court finds it possible that some of the *exact*

addresses may have eluded Darwich at the moment, the court also finds that Darwich

tried to shield some of those properties (notably, and without limitation, properties

located on Waterman, Wormer, Dale, Rosemont, St. Mary's, Grandmont, Asbury Park,

---

[6] Additionally, the court finds credible Agent Milan Sucevic's testimony that the importance of Darwich being "100 per cent truthful" was explained and stressed to Darwich at the beginning of the proffer session by the Assistant United States Attorney.

and Universal) by not giving *any* details regarding their location or existence.  Finally,

Darwich falsely misrepresented the nature of his business, in that he claimed it was a

construction business, but that its actual purpose, according to Toufaili, was to submit

fake construction invoices to insurance companies.

Darwich was given an opportunity, post-discussion, to supplement his proffer

with additional details or addresses.  Consistent with the testimony of Mr. Weiss, the

court finds that Darwich later provided a list of addresses, in a document printed in a

very large font.  This document was submitted to the court by the Government and is

dated June 10, 2009.  (Dkt. # 112.)  The court rejects Darwich's argument that the

Government's submission is fraudulent and that the Assistant United States Attorney is

lying in order to protect the mafia.[7]  (*See* Dkt. # 128.)  The document is consistent with

the court's recollection of the document to which Mr. Weiss referred on the witness

stand.  The document does not provide additional information about the missing

properties and constituted a further attempt to mislead the Government.

Thus, after hearing the considerable evidence of Darwich's misrepresentations

and omissions, as well as hearing evidence of Darwich's tape recorded post-proffer

admissions to Toufaili that he had, in fact, lied to the Government,[8] the court concludes

---

[7] For this reason, Defendant's March 29, 2011, "Motion Support Response to the
Government's Memorandum in Response to Court's Request to Produce Documents"
[Dkt. # 128] and Defendant's April 1, 2011, "Motion to Legal Advice Return all
Document" [Dkt. # 129] will be denied.

[8] The court takes account of, but rejects (with a certain degree of admiration for
its creativity) Darwich's fanciful explanation that he had been substantially truthful to the
Government agents, and was lying to Toufaili about lying to the Government to release
her from the inducement he knew she would feel, if he did not lie to her, to lie to the
Government agents herself, *i.e.*, he lied to her about lying to them to keep her from lying

11

that the Government has shown, by a preponderance of the evidence, that Darwich

materially breached the letter agreement.

In the brief filed by Darwich's former attorney, he attempts to downplay these

prevarications by arguing that they do not constitute a "substantial and material breach"

because the Government was ultimately able to secure a multi-count indictment against

multiple defendants.  The brief further attempts to analogize this case to *United States*

*v. Fitch*, 964 F.2d 571 (6th Cir. 1992).  In *Fitch*, the court found that a defendant's

inaccurate statements to the FBI did not amount to a substantial and material breach of

a similar immunity agreement.  *Id.* at 575.  However, in *Fitch*, unlike in this case, the

inaccuracies were minor and amounted to "nothing more" than an "effort to minimalize

his own involvement."  *Id.*  Such forms of minor inaccuracies, when dealing with

subjects under investigation, may sometimes be expected and, in the case of *Fitch*, "the

government was not misled by the untruths."  *Id.*  Additionally, on the basis of the

---

to them. What that lie might encompass Darwich never explained.  Did he think she was
preparing to conceal the truth of her criminal involvement?  By telling her he had lied
–which included substantial exculpation of her– was he trying to induce her to truthfully
admit her guilt?  Or did he think she was ready to falsely confess criminality and that his
lie about her lack of involvement was an attempt to pull her back from the brink of a
false admission?

The complexity of nested lies can make for an interesting game, as in the puzzle
of the captive faced with two doors, each guarded by a fierce looking man, one of whom
never tells the truth and the other of whom never lies. One door leads to destruction and
the other to freedom. The captive may ask only one question of one guard; he does,
and makes the right choice.  The puzzle is to devine what question he asked.

In his testimony, Darwich noted, with enthusiasm, that there existed no
agreement –nor any moral standard– prohibiting him from lying to his wife, and that he
did so quite regularly, considering her as worth "less than zero." In fact, he commented
agreeably more than once that he was quite capable of lying about anything at almost
any point in time if it served his purpose.  One who so proudly lies may be noteworthy
for a sort of swaggering bravado, but does not assist him when credibility is on the line.
The court is reminded of the guard in the puzzle who simply cannot tell the truth.

information provided by the defendant in *Fitch*, the government was able to "secure a multicount indictment against numerous individuals" and the defendant "also assisted the investigation in various other ways." *Id.*  Thus, the government had received the benefit of its bargain.  *Id.*  Accordingly, the district court found in *Fitch* that the defendant's "lack of candor did not amount to a material breach of the immunity agreement," a determination the Sixth Circuit perhaps doubted, but "was unable to say . . . was clearly erroneous." *Id.* at 574.

The Government cites to *United States v. Reed,* 272 F.3d 950, 955 (7th Cir. 2001), in which the Seventh Circuit analyzed the reasoning of *Fitch* and found that the facts presented in the case before it were distinguishable from *Fitch:*

> Contrary to Reed's assertions, the court in *Fitch* did not rule as it did simply because the lies that the defendant had told turned out to be benign.  The harmlessness of his statements was but one factor in the Sixth Circuit's analysis of the asserted breach.  Unlike the instant case, the government in *Fitch* was able to use other information provided by the defendant to further the investigation.  By contrast, not only did Reed seek to minimize his own wrongdoing, but he also attempted to avert the government's suspicions from Diggs.  Reed's violation thus denied the government the very benefit that the agreement was intended to secure-information that would aid in the identification and prosecution of other methamphetamine traffickers.  Reed's agreement, intended to be representative of a symbiotic relationship between a defendant and the government, had been reduced to a useless piece of paper that served only one of its parties.  Even applying the *Fitch* analysis, Reed materially breached his immunity agreement.

*United States v. Reed,* 272 F.3d 950, 955 (7th Cir. 2001).  Here, as in *Reed*, the Government has shown that it received virtually no benefit from Darwich's proffer and, instead, was provided with information so riven by falsehoods that Darwich's proffer,

13

even the truthful portions, was rendered unreliable in whole, and unusable.

Accordingly, this case is more analogous to *Reed* than to *Fitch*.[9]

In determining whether an agreement to provide truthful information was

materially breached, the *Fitch* court cited favorably the following language from a New

York district court:  "Although an inadvertent omission or oversight would not rise to the

level of a materially false statement so as to constitute a breach of the agreement, a

bad faith, intentional, substantial omission. . . does constitute a materially false

statement and thereby a breach of the agreement."  *Fitch*, 964 F.2d at 574 (citing *United

States v. Castelbuono*, 643 F.Supp. 965 (E.D.N.Y. 1986)). Darwich's statements easily

meet this standard.  His misleading, inaccurate, and incomplete statements were

intentionally made in a deliberate attempt to hide material information from the

Government and derail its investigation.

As discussed above, the essence of the agreement provides that if Darwich

made a truthful and complete proffer, the Government could not use that proffer against

him in its case-in-chief at trial. Thus, the court further finds that the terms of the letter

agreement unambiguously allow the Government to now use all of Darwich's

statements in the Government's case-in-chief (or wherever else it may choose).  If

---

    [9]  Defendant's brief also cites to *Richards v. United States*, No. 93-1631, 1994
WL 399531 (6th Cir. July 29, 1994), an unpublished Sixth Circuit case granting relief
under 28 U.S.C. § 2255.  *Richards* is entirely unpersuasive to the facts before the court.
First, *Richards* is an unpublished case (with a strenuous—and well-reasoned—dissent)
and thus non-binding authority.  Moreover, *Richards* involved a review under § 2255,
with a slightly different standard, and focused on the effectiveness of counsel in failing
to attempt to enforce a Rule 11 agreement.  *Id.*  While the extent of the defendant's
alleged breach of the agreement was an issue, the *Richards* court focused more on
counsel's failure to research the issue, raise it with the court, or adequately advise his
client.  *Id.*

Darwich had not breached the letter agreement, then the Government would be able to use his statements only in cross-examining him, or to rebut Darwich's statements pursuant to paragraph three of the agreement.  However, the remedy for failing to provide truthful and complete information is found within the letter agreement at paragraph eight, which provides that in the event of such a breach, "there are no restrictions on the [G]overnment's use of" Darwich's statements.  (5/13/09 Letter, Gov't's Ex. 1.)  Accordingly, the Government is not prohibited from using the statements in its case-in-chief.

### III.  CONCLUSION

IT IS ORDERED that Defendant's motion to dismiss the indictment or, in the alternative, to limit the admissibility of any statements made by Darwich to law enforcement officials [Dkt. # 65] is DENIED.

IT IS FURTHER ORDERED that Defendant's March 29, 2011, "Motion Support Response to the Government's Memorandum in Response to Court's Request to Produce Documents" [Dkt. # 128] and Defendant's April 1, 2011 "Motion to Legal Advice Return all Document" [Dkt. # 129], both of which allege that the Government's March 11, 2011, submission was fraudulent are DENIED.


      S/Robert H. Cleland
      ROBERT H. CLELAND
      UNITED STATES DISTRICT JUDGE

Dated:  April 7, 2011

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 7, 2011, by electronic and/or ordinary mail.

S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522